TRUEHEART v. PARKER. (No. 7058.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 20, 1923.)

1. Nuisance ⬨3(9)—Dance hall not nuisance per se.

A hall used for dancing is not a nuisance per se; yet, if accompanied with drunkenness, swearing, loud and boisterous language, or disorderly conduct, it may become a nuisance.

2. Nuisance ⬨34—Whether dance hall is a nuisance question of fact.

Unless a dance hall is condemned by law, whether it constitutes a nuisance is a question of fact to be tried by a jury.

3. Nuisance ⬨1—"Nuisance" defined.

A nuisance is anything that works an injury, harm, or prejudice to an individual or the public, and will embrace everything that endangers life or health, offends the human senses, transgresses laws of decency, or obstructs, impairs, or destroys the reasonable, peaceful, and comfortable use of property.

[Ed. Note.—For other definitions, see Words and Phrases, First, and Second Series, Nuisance.]

4. Nuisance ⬨33—Evidence held to show dance hall to be nuisance.

In an action to restrain the maintenance of a dance hall across the street from plaintiff's residence, evidence *held* to show as a matter of law that the dance hall was a nuisance and to entitle plaintiff to the relief sought.

5. Nuisance ⬨6—Dance hall operated under permit may be a nuisance.

A permit from the mayor or a tax commissioner cannot sanctify a dance hall or rob it of its injurious effects on persons and property.

6. Trial ⬨133(2)—Argument of counsel in suit to restrain dance hall held prejudicial error.

In a suit to restrain the use of a building as a dance hall on the ground that it was a nuisance, that defendant's attorney in his closing speech told the jury that if they found that the dance hall was a nuisance it would put defendant out of business and he would lose all he had invested, amounting to more than $3,000, for which he had worked so hard, *held* improper and prejudicial, notwithstanding cautionary instructions.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Suit by Henry M. Trueheart against L. R. Parker, for an injunction. Decree for defendant, and plaintiff appeals. Reversed and rendered.

See, also, 246 S. W. 428.

Joseph Ryan, of San Antonio, for appellant.

Hugh R. Robertson, of San Antonio, for appellee.

FLY, C. J. This is an appeal from a judgment of the trial court denying a permanent injunction to restrain appellee from using a building on the north side of Josephine street, in the city of San Antonio, as a dance hall, and setting aside and dissolving a temporary injunction theretofore granted. Appellant sought to restrain the use of the building for purposes of a dance hall, on the ground that as conducted it was a nuisance and greatly disturbed the peace and quiet of him and his family, and depreciated the value of his property, which is situated directly across Josephine street from the property controlled by appellee.

It was alleged that Josephine street, running west from river avenue, is about 55 feet in width, and that appellee has constructed a lumber shed or barn about 40 feet wide and 90 feet long on a lot directly across Josephine street from appellant's residence property, on which appellant resides with his family, and other adjoining portions of the property owned by him, occupied by a tenement house and an apartment house; that the dance hall is in full view of the occupants of his property, and the music therein and the unchaperoned females and others who meet there and dance at night until 11 or 12 o'clock, and are boisterous and sometimes profane, greatly disturb appellant and his family.

The court presented the following issue to the jury:

"Does the operation of defendant's dance hall do injury to plaintiff's property or person, or cause annoyance and discomfort to plaintiff and his family in the use and enjoyment of their home?"

The jury answered the question in the negative, and upon that answer the judgment was rendered in favor of appellee. No other issues were requested and none given.

[1, 2] A hall used for dancing is not a nuisance per se; yet, if accompanied with drunkenness, swearing, loud and boisterous language, or disorderly conduct, it may become a nuisance. Unless a dance hall is condemned by law, whether it is or is not a nuisance is a question of fact to be tried as any other fact by a jury. The dance hall of appellee was a licensed dance hall and was being conducted under authority from the city of San Antonio at the time of being closed by a temporary injunction issued in this case. It was therefore not a nuisance per se, but was or was not a nuisance under proof of the manner in which it was conducted.

[3] A nuisance, broadly stated, is anything that works an injury, harm, or prejudice to an individual or the public. According to definitions formulated from numerous decisions, a nuisance will embrace everything that endangers life or health, offends the

human senses, transgresses laws of decency, or obstructs, impairs, or destroys the reasonable, peaceful, and comfortable use of property. Personal and property rights are guaranteed by the organic and statutory law of the land, but liberty, not license, in the use of these rights is the heritage of the American citizen, and coupled with the protection and conservation of rights of person and property is the mandate, to so use them as to not trample upon, disregard, or destroy the rights of others. If the individual persists in attempts to disregard the old maxim, "Sic utere tuo ut alienum non lædas," equity stands as a sentinel over the public or individual whose rights are invaded and issues its stern commands to the offender to desist from the invasion of the rights of others. In the investigation into the question of whether certain acts constitute a nuisance, it is the general though not the invariable rule that neither negligence nor the intent of the party creating the nuisance are of any great importance. Acts which are denounced as illegal by law, when the perpetration of them invade the rights of others will be nuisances per se, but other acts in their nature may not be nuisances but may become by their location, situation, surroundings, or the method in which the acts are given utterance, or the manner in which a business or performance is conducted. A thing which is at all times and under any set of circumstances a violation of the rights of others is a nuisance per se. In other cases certain facts might create a nuisance, but about which honest differences might exist. 20 R. C. L. §§ 1 to 6, inclusive.

The charter of the city of San Antonio does not recognize the absolute right of a citizen to open and conduct what is known as a "dance hall," but permits them to be operated only when licensed by the proper authority. Common experience has taught that public places where men and women, whose characters under no system can be properly investigated, have the right upon payment of certain fees, to assemble and engage in dancing, and perhaps drinking, may become foci of moral disease and infection, from which may emanate crime, drunkenness, immorality, and disorder, and such community centers are tolerated only under strict police surveillance and control. With this experience to guide the municipality it has reserved the right to grant or refuse licenses for dance halls, and it is evident that, if such places should ever be licensed, a due regard for the rights of the homebuilder would dictate the refusal to permit the operation of them in close proximity to residences. No self-respecting citizen with a home in which lives his wife and children could fail to be disturbed by the proximity of a place of assemblage at night of men and women, who to the accompaniment of screeching pianos, high-keyed violins and blaring saxophones, emitting the strains of barbaric jazz, more discordant than tom-tom or Chinese gong, transform rest and slumber into a nightmare, and render hideous the hours set apart by nature for their enjoyment.

[4] The evidence in this case shows that the dance hall of appellee is directly across Josephine street from the residence and other property of appellant, as well as other residences; that from 75 to 150 people would assemble there at night, and a dance would be run there daily from 8 o'clock p. m. to 11:30 p. m. The entrance fee was 55 cents for men, and women were admitted without charge. Many of the women were not chaperoned. The dance was known as the Silver Leaf Club. No one swore that the music and voices in the hall could not be heard in the home of appellant. Several witnesses swore that they could be heard, and there was ample testimony to show that the street in front of appellant's house was nightly almost blocked by automobiles and that their honking and other noises were very disagreeable and disturbing. All of the witnesses for appellee were either patrons of the dance hall, or women there to control the female dancers and others interested in the affairs of the dance hall. They were not disturbed of course. They went there to dance, to hear the roar of drums, and the music of the fiddle and the saxophone. It was either their business or their pleasure to be there, and they were not disturbed. The people who lived in their homes in the immediate vicinity, however, swore, and no one contradicted them, that until the din and noise had died out because the dancers had dispersed, sleep was driven away and the night robbed of its rest and comfort. To those that business or pleasure had lured to the dance, it was a terpsichorean dream of pleasure, while to the unfortunate denizens of the homes near by it was a terrible nightmare, and while the dancers chased the fleeting hours with flying feet to the sensuous strains of dance hall music, the residents tossed upon sleepless beds.

[5] The question to be solved was not whether the dance hall disturbed the habitués of the hall, the passers-by who stopped out of curiosity, or the residents of other blocks not in the immediate vicinity, but did it disturb the peace and comfort of appellant and his family, and was it calculated to interfere with him in the full enjoyment of his property? The testimony, without contradiction, answered the question in the affirmative. Common sense and reason and universal experience combine to declare that a dance hall cannot be conducted under modern conditions in close proximity to private residences in such a way as to not disturb the occupants and not amount to an invasion of their rights of person and property. A permit from a mayor or a tax commissioner

257 S.W.—41

cannot sanctify a dance hall or rob it of its injurious effects on persons and property.

[6] The attorney for appellee, in his closing speech to the jury, told them that if they answered the issue in the affirmative it would put appellee out of business and he would lose all he had invested in the dance hall, amounting to more than $3,000, for which he had worked so hard. This was objected to by appellant, and the court instructed the jury not to consider it. The argument was so improper, however, and so strongly calculated to arouse the sympathy of the jury for appellee, and create a bias in his favor and a prejudice against appellant that its effects could not be removed by an instruction of the court, and it doubtless influenced the verdict of the jury.

The judgment is reversed and judgment here rendered that a permanent injunction be issued against appellee, as prayed for in the petition, and that appellee pay all costs in this behalf expended.