Opinion delivered May 11, 1888.

## No. 6417.

## THE STATE OF TEXAS *v.* CHARLES GOODNIGHT.

1. UNLAWFUL ENCLOSURE OF SCHOOL LANDS—INJUNCTION.—A demurrer was sustained to a petition filed by the Attorney General to compel by mandatory injunction the removal of enclosures around many thousand acres of public free school lands, which, in connection with line riders, practically enclosed and appropriated the same, excluding the public from grazing thereon, interfering with the removal of stock from one portion of the State to another, obstructing travel and impeding the sale of the public lands, *held:*

    (1) Such an enclosure is both a purpresture and a public nuisance.

    (2) By impeding the sale of the public lands, the act charged was violative of the act of February 7, 1884, and it was the duty of the proper officers of the State to remove the obstruction by legal proceedings.

    (3) The enclosure, in so far as it might obstruct the right of common and the removal of cattle to market, would be such an interference with individual rights in public property as to constitute a nuisance, subject to be abated at the suit of the State, to accomplish which injunction is an appropriate remedy.

    (4) The fact that, by virtue of the act of February 7, 1884, the enclosure of public land is made a penal offense, does not impair the right of the State to remove such enclosure by mandatory injunction.

    (5) The decision in Attorney General v. Woods, 108 Massachusetts Reports, 436, approved.

    (6) The State is not confined to the action of trespass to try title to enforce its right to remove the enclosure.

    (7) The defendant could be enjoined from constructing new fences of the character complained of, without being compelled to join as de-

fendants other persons who might be interested in the performance of such unlawful act, though he could not be compelled by mandatory injunction to remove a fence owned in part by others who were not defendants.

2. ABATEMENT.—A plea in abatement, predicated on the non-joinder of parties defendant, should set forth definitely the nature and extent of the interest of each person who is claimed to be a necessary party.

3. INJUNCTION.—In proceeding by injunction to compel the removal of fences which enclose public free school land, the defendant can be compelled to remove such fences as he has constructed on his own land, or on public land, but he can not be compelled to remove such portions of the fencing as are on the lands of others, though he may have been a party to their erection, unless the owners of the land are made parties to the suit. If the defendant be part owner of the fence, either as partner or co-tenant, and such tenant or partner is beyond the reach of the court's process, he may be compelled to remove the fence without joining such co-tenant or partner as co-defendant.

APPEAL from Donley.   Tried below before the Hon. Frank Willis.

*John D. Templeton,* for the State:  1.  It—the plea in abatement—did not disclose the fact, if it existed, that other persons within the jurisdiction of the court than the defendant Goodnight had a property interest in the whole of all the fences, to secure the abatement of which the suit was in part brought.

2.  It did not clearly negative the fact that part of the enclosures were owned or controlled entirely by the defendant, so that the court could lawfully order him to remove the same.

3.  It did not disclose in what particular parts of the fences other persons than the defendant (naming the persons with their residences), in the jurisdiction of the court, were interested, nor what particular parts they owned, nor the particular interest owned by them in the fences.

4.  It is not denied that the fences were erected by him, and that they are under his control, and that he is doing the other illegal acts, to restrain which the suit in part was brought.

5.  It did not give the plaintiff a better writ.

The district court has jurisdiction in the matter of injunction irrespective of the amount in controversy.

That some of the said acts complained of as working an injury to the property interests of the State, and as violating its public policy in regard thereto, and as being against the general good of the State, constitute also a statutory offense, will not prevent the issuance of the writ of injunction to restrain

them.    (Pennsylvania Lead Co.'s App., 96 Pa. State, 123; High on Inj., secs. 745, 752.)

The facts alleged in the petition entitled the plaintiff to the restraining injunction prayed for.

The facts alleged therein entitled the plantiff to the mandatory injunction prayed for.

Restraining injunction:   2 Willson's Civil Cases, section 690; Wood on Nuisances, page 817, section 770; Davis v. Mayor, 14 New York, 526; 3 Bland Md. Ch. Rep., 383; Wood on Nuisances, page 27, section 18; Wood on Nuisances, page 823, section 772; High on Injunction, sections 759, 760, 764, 1554, 724, 734; United States v. Gear, 3 Howard, 120; Wood on Nuisances, page 95, section 91; Pennsylvania v. Wheeling Bridge Company, 13 Howard, 621.

Mandatory injunction:   United States v. Brighton Ranch Company, 25 Federal Reporter, 465; United States v. Brighton Ranch Company, 26 Federal Reporter, 218; Story's Equity, 924; Linzee v. Mixer, 101 Massachusetts, 512; Creely v. Bay State Brick Company, 103 Massachusetts, 514; McDonough v. Calloway, 7 Rob., Louisiana, 445; Daniel's Chancery Practice, 1661, 1662; Stanford v. Lyon, 37 New Jersey Equity, 112; O. S. M. Company v. V. & G. H. W. Company, 1 Sawyer, 470; same case, Id., 685; Manners v. Johnson, 1 Chancery Division (Eng.), 681; Krehl v. Burrell, 23 Moak, 703; same case, 27 Id., 404; Cook v. Chilcott, 18 Moak, 761; High on Injunctions, sections 646, 708, 1150 and 1158; article relating to mandatory injunction, with full citation and review of authorities, 18 Central Law Journal, 323, 343; Murdock's case, 20 American Decisions, 381, with note; Corning v. Troy Iron Factory, 40 New York, 191; People v. Vanderbilt, 28 New York, 396; Attorney General v. Cohoes Co., 6 Paige's Chancery, 133; The State v. Woodard, 23 Vermont, 92; The State v. Atkisson, 24 Vermont, 448; Wood on Nuisances, page 93, section 88; page 88, section 85; page 86, section 84; Pennsylvania v. Wheeling Bridge Co., 13 Howard, 621; Del. and R. Canal and C., and A. R. and T. Company v. Del. and R. Bay R. Company et al., 16 New Jersey Equity, 379.

*Walton, Hill & Walton*, for appellee:   The plea in abatement is sufficient, and the demurrer thereto was properly overruled.    (3 Wait's Actions and Defenses, p. 759; Dicay on Parties, rule 116, with comments and authorities; Buffalo Ship

Channel v. Bruley, 45 Texas, 8; Story's Equity Pleading, sec. 72; De la Vega v. League, 64 Texas, 212.)

The exceptions to the plea in abatement were properly overruled, the plea itself, by its sworn allegations, answering, by proper averment, the objections taken to it.

Defendant's objections to plaintiff's petition were properly sustained. (Adequate Remedies at Law, session acts 1884, pages 69 and 70; Rev. Stat., title, Trespass to Try Title; Pomeroy's Equity, secs. 221, 1338, 1346, 1359.)

Face of bill does not show a case for interposition of a court of equity. (Pomeroy's Equity, sec. 1338; Burnley v. Cook, 13 Texas, 589; Jerome v. Ross, 7 Johns. Ch., 315; Wait's A. and D., vol. 3, pages 683 and 684, secs. 5, and authorities cited; Id., secs. 8 and 9, and authorities; page 694, sec. 7; page 700, sec. 7; page 704, under sec. 9; also pages 706 and 707; High on Injunction, secs. 23, 29, 649, 699, 701, et seq., 740 et seq., 760 et seq.; Abbott's Trial Evidence, pages 640, 641, 642 and 643; Story's Equity, 972 et seq.)

GAINES, ASSOCIATE JUSTICE.  On the fifth of May, 1886, the State of Texas, by John D. Templeton, its Attorney General, filed its petition against the appellee, Charles Goodnight, for a mandatory injunction to compel the removal of certain enclosures around public lands of the State, and to restrain the construction of any additional fences. The defendant filed a plea in abatement on the ground that there was a want of necessary parties to the action; and also a general demurrer to the petition. The plaintiff excepted to the plea in abatement, and the exceptions were overruled. The court then sustained the demurrer to the petition, and the State declining to amend, the petition was dismissed.

We are of the opinion that the demurrer to the petition was improperly sustained. The allegations show that the defendant had practically enclosed for the purposes of pasturing and raising cattle and horses over six hundred thousand acres of the public school lands of the State; and also over fourteen thousand acres of its unappropriated public domain ; and that when the fences are not continuous the enclosures are "guarded by line riders, or in some other equally effective manner." It is alleged that the enclosures prevent the use of the public lands so enclosed as commons for grazing purposes by the inhabitants of the State, and

greatly interfere with the moving of stock to market by her people and obstruct the travel of the public; and that they are contrary to the policy of the State, are expressly forbidden by the acts of the Legislature, approved February 7, 1884, and seriously impede the sale of the lands under the laws which have been enacted for that purpose. We think the enclosures set forth in the petition, both a purpresture and a public nuisance. "A purpresture strictly is an encroachment upon a public right in lands or navigable streams that does not operate as an obstruction or injury to individual members of the public, but only to some right incident and peculiar to it in its aggregate capacity as such." (Wood on Nuisance, sec. 84, p. 87.) In so far as the fences alleged in the petition interfere with the sale or lease of the public lands, the petition shows an injury to the public as an aggregate body—they affect all alike.

This is an obstruction of a right which the State, before the passage of the act of February 7, 1884, might have waived, but which since the passage of that act it becomes the duty of its proper officers to remove by legal proceedings. But the obstruction complained of in this case is something more than an interference with the rights of the State as a body politic. In so far as it obstructs the right of common in the public lands and the moving of cattle to market and their passage in being removed from one part of the country to the other it is an interference with individual rights to public property. The enclosure of public lands for private use, whether viewed as a wrong merely to the body politic or as an infringement of the privileges of its citizens, is a nuisance subject to be abated at the suit of the State, and an injunction is a well recognized and appropriate remedy. U. S. v. Brighton Ranch Co., 26 Fed. Rep., 218; same case, 25 Id., 465; Railway Co. v. Ward, 2 Black, U. S., 485; State v. Atkinson, 24 Vt., 448; State v. Woodward, 23 Vt., 92; Attorney General v. Wood, 108 Mass., 436; Lead Co.'s App. 96 Pa. St., 116.)

But it is insisted in the brief of counsel for appellee that the State has a plain, adequate and complete remedy, without resort to the writ of injunction. We understand it to be claimed, in the first place, that because the act of February 7, 1884, makes the enclosure of the public lands a penal offense, and provides for the prosecution and punishment of offenders against it, that therefore a court of equity will not interfere,

But this proposition can not be maintained.  Public nuisances were indictable at common law, and yet were always subjected to be enjoined.  (The People v. St. Louis, 5 Gilm., 351; Lead Co.'s Appeal, 96 Pa., State 116; Attorney General v. Hunter, 1 Dev. Eq., 12; Railway Co. v. Black, U. S., 485.)  In Attorney General v. Woods, 108 Massachusetts, 436, an injunction was held to be a proper remedy, although the statute which declared the nuisance which was sought to be enjoined, made provision for the indictment of who offended against its requirements.

Besides, the act provides that its provisions shall not apply to any person or corporation who has heretofore, or who may thereafter, in good faith, fence land not their own.  (Acts 1884, p. 69, sec. 3.)  Hence a criminal prosecution would not succeed unless it were shown beyond a reasonable doubt that the enclosure was erected with unlawful intent; whereas, in a suit for an injunction, proof of good faith would constitute no defense.

But we are also referred to our statutes which provide for the action of trespass to try title as affording an adequate legal remedy for the wrongs complained of in this case, but we do not so regard it.  It may be, that if the fence were wholly or mainly upon the public lands, that the State, by bringing an action for the recovery of the possession, could eject the intruder and destroy the enclosure.  But such, as we understand it, is not the case made in the petition.  The petition alleges that the defendant has enclosed the lands of the State; not that they have erected the enclosures upon their lands.  The case of the United States v. Brighton Ranch Company, 26 Federal Reporter, 218, was brought in the United States circuit court for Nebraska, to compel the defendants, by a mandatory injunction, to remove a barbed wire fence erected partly on the public land and partly on its own, around some fifty thousand acres of the public domain of the general government.  At a preliminary hearing upon the law of the case, Judges Brewer and Dundy held that the action was properly brought; and on the final hearing, Mr. Justice Miller, of the Supreme Court, sitting in the circuit, awarded the mandatory injunction compelling the removal of the enclosure.  (U. S. v. Ranch Co., 25 Fed. Rep., 465.)  That case affords an authoritative precedent for the procedure in the case before us.

We are also of opinion that the court below erred in overrul-

ing the exceptions to the plea in abatement. The plea set up
that there were other persons, natural and artificial, who were
interested in the fences which were sought to be removed, and
gave in part the names and residences of the parties so inter-
ested. It also alleged that the defendant was not the sole owner
of any part of the enclosures. There was a general exception to
the plea, and also a special exception that it was too vague, in
that it did not distinctly specify in what part of the fences the
persons and corporations each had an interest. It is insisted
in argument that the exceptions should have been sustained,
because it is no answer to so much of the petition as seeks to
restrain the construction of new fences, to say that others are
interested in the fence already made. The premise of this ar-
gument is sound, but the conclusion does not follow. The plea
is not an answer to the petition in so far as it seeks the re-
straining order. We think the defendant could be enjoined
from doing a wrongful act of this character without reference
to the interest of any other person in the act he was about to
perform. But he should not be required to remove property
owned in whole or in part by others without such owners being
made parties to the action, provided such owners be within the
jurisdiction of the court. Hence, the plea, if otherwise suffi-
cient, was good as to so much of the petition as sought a man-
datory injunction and should not have been stricken out be-
cause the persons named in it were not necessary parties as to
a part of the relief sought. But we think that the exception to
the plea on account of its vagueness was well taken. A plea in
abatement should not only show the grounds upon which the
suit should be abated, but should also give the plaintiff a better
writ—that is, it should not only show that the suit is improp-
erly brought but also how it should have been brought. The
plea in this case says that others are interested in parts of the
fences, but does not allege in what parts each have an interest,
nor does it state the nature of that interest. A pleading should
always state facts and not conclusions of law, and a plea in
abatement, which sets a non joinder of parties defendant
should show definitely and specifically the nature and extent
of the interest of each person, who is claimed to be a necessary
party.

In view of another trial it is proper to add a few remarks in
regard to the extent to which the court may go, in granting
relief to the plaintiff as to those portions of the fences in con-

troversy, in which persons have an interest who are beyond. the jurisdiction of the court. We think the ends of justice make it necessary that the State should be allowed to proceed to judgment in such cases, as to those parts of enclosures, if any, which he has constructed or caused to be constructed upon either his own land or that of the State. (Railroad Co. v. Word, 2 Black, U. S., 485; C. S. M. Co. v. G. H. W. Co., 1 Sawyer, 470; same case, Id., 685.) Having created a nuisance, he should be compelled to remove it—when this can be done without trespassing upon the property of third persons—without reference to the interest of persons who can not be made parties to the suit. Such portions of the enclosures as are upon the lands of others, he can not be enjoined to remove, although he may have been a party to their erection, unless the owners of the lands are parties to the suit. If he be a part owner of the lands upon which the fences are found, either as partner or cotenant, and has been instrumental in creating the nuisance, he should be compelled to abate it, although his cotenant or partner be not a party to the proceedings, when such tenant or partner is beyond the reach of the process of the court.

But in all cases, when persons have an interest in the enclosures who are within the jurisdiction of the court, we think a proper practice requires that they should be made parties to the proceedings.

For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*